IN RE NELLIE BARTLETT CHASE.

(Filed 30 March, 1927.)

**1. Habeas Corpus—Insanity—Legality of Detention of Petitioner.**

The question to be determined by the judge in *habeas corpus* proceedings is the legality of the restraint of the petitioner, and such proceedings are not available as a means of reviewing and correcting mere errors as distinguished from defects of jurisdiction. C. S., 2234, 2235.

**2. Same—Certiorari.**

When the petitioner in *habeas corpus* has been adjudged insane and her detention is ordered by a court of lunacy of another state, the judge of the Superior Court in this State by whom the proceedings of *habeas corpus* is heard should determine the validity of the order of the adjudi-

cation of insanity when the same is properly presented to him, and this is the determinative question involved, and upon failure to have done so the case will be remanded.

3. **Same—Courts — Temporary Orders — Restraint — Inquisition of Insanity.**

> When the judge before whom proceedings in *habeas corpus* are had, involving the question of the petitioner's detention upon the validity of an inquisition of lunacy in another state: *Held*, should the matter be remanded and the proceedings in lunacy be held invalid, and it appears to the trial judge that the petitioner should be restrained on account of present insanity, he may issue a temporary order for her safety and welfare pending proceedings lawfully to be held in such instances.

APPEAL by petitioner from an order of *Schenck, J.*, refusing the petitioner's release upon *habeas corpus*. From BUNCOMBE. The material facts are stated in the opinion.

*John Neal Campbell, Wells, Blackstock & Taylor and Joseph W. Little for petitioner.*
*Mark W. Brown for petitioner's guardian.*

ADAMS, J. The case was brought to this Court by *certiorari* to review a judgment denying the petitioner's discharge upon a writ of *habeas corpus*. It is alleged in the petition that Mrs. Chase is detained in a hospital in the city of Asheville under the pretense that she is insane; that no proper commitment can be found; and that her restraint is without authority of law. The writ was duly returned and an answer was filed by her guardian, who alleged not only that she is insane, but that her detention was expressly authorized by a judgment given in an inquisition of lunacy. It appears from the record that in May, 1926, such an inquisition was instituted in the county court of Dade County, in the State of Florida, and that the petitioner was formally adjudged to be insane. Her brother was appointed guardian of her person and estate, and she was put in his care and custody "to be admitted to a private hospital for the indigent insane for care, maintenance and treatment." Thereafter she was brought to Asheville and confined in the hospital from which she now seeks to be released.

When the petition was heard affidavits, record evidence, oral testimony and letters were introduced, and the judge found certain facts upon which the judgment was based. These facts embody the inquisition in Florida, the appointment there of a guardian of the petitioner's person and estate, her commitment to the hospital in Asheville, and her present insanity, together with the specific finding that the petitioner "could not be discharged and allowed to go at large without endangering the safety of herself and the safety of others." Upon the facts it

IN RE CHASE.

was adjudged that the petition be denied and the petitioner be committed to the care and custody of the Appalachian Hall for treatment.

The petitioner was first committed under an inquisition of lunacy prosecuted outside this State, and upon the hearing before the judge and in the argument here she assailed the inquisition upon the ground that it is void upon its face, or if not, that upon all the evidence it should be declared void. Her deduction is that her restraint is therefore illegal. There is nothing in the judge's order which disposes of this question— no adjudication that the inquisition is sufficient in law to justify the commitment. The fact that the petitioner is insane does not necessarily imply that her detention has the sanction of law. To have the legality of her restraint inquired into and the validity of the inquisition determined is the cardinal purpose of her petition. It is provided that the court or judge before whom the party is brought on a writ of *habeas corpus* shall examine into the facts and into the cause of the confinement, and shall discharge the party if no legal cause be shown for the restraint. C. S., 2234, 2235.

*Habeas corpus* is in the nature of a writ of error to the extent of examining into the legality of a person's detention, but it is not available as a means of reviewing and correcting mere errors as distinguished from defects of jurisdiction. *S. v. Edwards,* 192 N. C., 321. The inquiry is not addressed to errors, but to the question whether the proceeding and judgment are nullities or whether they are warranted by law. *In re Holley,* 154 N. C., 163. So at the hearing the judge was confined to the question whether the petitioner was unlawfully restrained of her liberty, or whether she had been committed to the hospital in consequence of proceedings legally and properly constituted for that purpose; for at the hearing it was not permissible to convert the writ into a proceeding in the nature of an inquisition of lunacy for the purpose of adjudging, as cause for continued restraint, the petitioner's present mental condition. Apparently, this was the practical result, as the foundation of the judgment is a finding of insanity.

The cause will be remanded to the Superior Court of Buncombe County with instructions to determine whether the petitioner is unlawfully restrained of her liberty. If it should be adjudged that her confinement is unlawful, and that she is now insane, a temporary order may be made for her safety and welfare pending such further inquiry or action as may be deemed necessary or expedient in the premises.

Remanded.